**Mrs. Louise GATES, Plaintiff,**

v.

**GREYHOUND CORPORATION et al.**
**Civ. A. No. 827.**

United States District Court
S. D. Mississippi, W. D.
Dec. 14, 1960.

Joseph E. Brown, Jr., Laub, Adams, Forman & Truly, Natchez, Miss. Ellis Bodron, Vicksburg, Miss., for plaintiff.

Brandon, Brandon, Hornsby & Handy, Natchez, Miss., for defendant.

MIZE, District Judge.

The plaintiff, Mrs. Louise Gates, is a citizen of Mississippi and the defendant Greyhound Corporation is a foreign corporation, and the court has jurisdiction.

On December 23, 1954, the plaintiff purchased a ticket at Natchez, Mississippi, for transportation from Natchez, Mississippi, to Hot Springs, Arkansas, and return. The ticket so purchased entitled plaintiff to transportation from Natchez to Little Rock, Arkansas, over the Missouri-Pacific Transportation Company bus and its lines and left Natchez at 3:10 p. m. on December 23rd. The Missouri-Pacific Transportation Company, hereinafter referred to as Missouri-Pacific, operated from Natchez, Mississippi, to Little Rock under proper authority of the Interstate Commerce Commission and the various states through which it passed. The Missouri-Pacific was originally named as a defendant, but process not having been served on it, the plaintiff dismissed as to the Missouri-Pacific.

The Greyhound Corporation, hereinafter referred to as Greyhound, operated from Natchez, Mississippi, to New Orleans, Louisiana, and had no right to operate its busses from Natchez to Little Rock.

On June 7, 1949, the defendant Greyhound and Missouri-Pacific entered into a contract, the material parts of which are that the parties desiring to operate through busses for the transportation of passengers and their baggage for hire between New Orleans and Little Rock over the routes of Greyhound and the routes of Missouri-Pacific agreed that Greyhound would furnish a certain number of busses for use by the Missouri-Pacific over its routes and the Missouri-Pacific was to furnish Greyhound certain busses for use by Greyhound from Natchez to New Orleans. Those furnished by Greyhound to Missouri-Pacific would be run from Natchez to Little Rock and return. The contract further provided that a bus coming from New Orleans to Natchez when taken over by Missouri-Pacific would be under the exclusive control of Missouri-Pacific, and likewise a bus of Missouri-Pacific coming into Natchez would be operated from Natchez

to New Orleans under the exclusive control of Greyhound. Greyhound was responsible for the repair of all of its busses so furnished and Missouri-Pacific was responsible for the repairs of all busses that it furnished, but all employees of Greyhound would operate the busses as employees of Greyhound from Natchez to New Orleans. All employees of Missouri-Pacific would operate the busses of the Greyhound as employees of Missouri-Pacific from Natchez to Little Rock. The contract further provided that equipment furnished under the contract should fulfill the requirements of all the laws of the state and the rules and regulations of the Interstate Commerce Commission. Each party agreed to pay the other party rental for the use of such other party's equipment at the rate of fourteen (14¢) cents per bus mile. The contract further provided that each party should have control of and be responsible for the coaches used in operating the service during the entire time that the coaches were operated on its segment of the through route and that this responsibility should begin at the terminal arrival at the other party's segment through which the route begins. In short, a bus of Greyhound arriving in Natchez terminal would be taken over there by the driver of Missouri-Pacific and the driver of Greyhound would release it to the driver of Missouri-Pacific. The contract further provided that party having control of and responsibility for a coach under the agreement should during the time it had such control and responsibility be solely responsible for all personal injuries that should occur as a result of the use and operation of the coach during that time. The contract further provided that neither party made any warranty to the other as to the mechanical condition of the coaches furnished under the contract but that before accepting control of the bus a party had the right to make inspection of it and determine for itself whether it was safe or not, and further provided that the acceptance of a bus relieved the other party against all claims and that the acceptance was conclusive

evidence that the coach was in a safe and efficient operating condition.

The plaintiff became a passenger of the defendant Missouri-Pacific on December 23, 1954, and at McGehee, Arkansas, was directed to transfer to another bus for transportation from there to Little Rock. This she did and became a passenger on the Greyhound bus furnished under the aforesaid contract and some distance out of McGehee during the night time about nine or ten o'clock she was injured by a sudden recline of the seat she was occupying, causing her to fall to her left and injured her back.

When she entered the bus, or soon thereafter, she endeavored to raise the back of the seat to a more upright position and was having some difficulty when a passenger next to her adjusted the seat for her and she took her seat again. Sometime thereafter, the bus becoming somewhat cool, she was attempting to remove her coat, which was thrown over her shoulders and the bottom part of which she was sitting on, and braced her feet against the seat in front of her or the floor and pushed her back against the back of the seat exerting considerable strength so as to raise her body and was pulling the coat from under her body and the back of the seat suddenly went all the way back, causing the fall. She testifies that she did not touch the lever which controls the movement of the back but that without any known reason to her it slipped back. This testimony is contradicted only by circumstances, the circumstances being that upon inspection of a similarly constructed seat it is not probable that the seat would recline without the lever being raised.

She made no complaint of her injury to the bus driver and made no complaint to any representative of the Missouri-Pacific upon her arrival at her destination, but did state to this other passenger who had adjusted her seat that she had suffered some pain and took his name and address. So far as the record shows, she made no complaint to the Missouri-Pacific or Greyhound until she filed this suit for damages on the 21st of December, 1957.

344

She saw a doctor a few days after the injury, who thought that her injuries were minor. During the time following this, before she had filed her suit, she saw a number of doctors and continued to suffer with her back, arm and leg, and continues to suffer at this time from the injury, and her injury probably is permanent to the extent of five or ten per cent but she is improving and has continued to work throughout the period, but with difficulty and pain. As a result of the pain she resigned some positions in order to obtain lighter work and has worked almost regularly up to the present time.

Greyhound has shown as a fact, and it is a fact, that the bus on which she was a passenger was purchased from a reputable manufacturer and the seat is so constructed that by the use of a lever the back can be lowered or raised. To lower the back the lever is pulled upward and this releases the lock which holds the back of the seat in position and it can be thereby lowered to three positions. To raise the seat back the lever is pushed down and there is a control spring of substantial strength that is expanded and the back of the seat automatically rises. The equipment that locks the seat in place is something like saw teeth in large size, substantial, steel and it fits into a slot composed of steel with several notches and is durable for practically the life of the bus.

Greyhound has a system of inspection of every bus as it comes into the terminal at New Orleans, where it is washed, greased and inspected thoroughly by its employees underneath and inside the coach. The employees go through the bus, raise the back of the seats to the upright position and exert strength and force upon the back to see if there is any defect in the seat in any way whatsoever.

No mechanic of Greyhound who actually made the physical inspection testified in this case, but the foreman of the mechanics in the New Orleans Division did testify and produced the records that are required to be kept to show that this bus had been inspected and no defects found. The system of inspection and the record thereof is noted on what is known as the Repair Order. The particular bus in question was number T897. When this bus is inspected the Repair Order is placed on the bus and any defects of any type whatsoever found upon inspection is placed upon this Repair Order. The Repair Order is kept on the bus during the entire trip and when the bus driver arrived at Natchez, Mississippi, the Repair Order was on the bus and remains thereon, and if any defects occur during the route over Missouri-Pacific the bus driver would note any defects of any type. All of these Repair Orders from the records of the company were produced in court and several introduced as exhibits. Not one of these Repair Orders indicated any defect at any time ever noted upon the bus T897. Every driver who handled the bus from New Orleans to Little Rock on the trip made by the plaintiff was produced as a witness. The driver of the bus in question testified that as he arrived in Natchez before turning the bus over to Missouri-Pacific he inspected the seats and no defects were found. The Missouri-Pacific bus driver upon taking charge of the bus inspected every seat and no defect was found in the back of the seat or any other part of it. The testimony of the drivers show that this was followed throughout and no defect was found in the mechanical operation of the back of the seat.

The particular seat that was on that bus was not available, but a seat of the same year and model of the bus was exhibited in court and the method of operating was shown. Upon a view of the mechanism of the lever and the slots that control the operation of the seat it is not probable that the seat could fall back without the lever being in some way physically manipulated, but the evidence fails to show whether or not it was manipulated. There is a failure to show with a reasonable degree of certainty that it was or was not manipulated.

Conclusions of Law

The burden of proof is upon plaintiff to show by a preponderance of

the evidence that the defendant was guilty of negligence. This the plaintiff has failed to do. The Greyhound and Missouri-Pacific were joint adventurers under the contract and as such Greyhound owed plaintiff under the law of Arkansas a very high degree of care to furnish facilities reasonably safe for her transportation. Objection was made to the introduction of the contract, but this objection is not well taken and it was overruled at the time and will be now overruled. Greyhound could not contract to relieve itself of negligence belonging to it and if Greyhound had not made reasonable inspections of the seat, and if the seat had been shown to have been defective, then it would have been liable for its own negligence. Ordinarily connecting carriers are liable only for negligence on its lines and are not liable for negligence of a connecting carrier over the connecting carrier's lines, but under the contract in this case Greyhound and Missouri-Pacific were not connecting carriers in that sense but under the contract they were joint adventurers and it was the duty of each one to exercise a very high degree of care for the passengers of the other while on a bus furnished by the other carrier.

Plaintiff relies to a large extent upon the case of Gerard v. American Airlines, Inc., 2 Cir., 272 F.2d 35. This case is applicable to the extent that the doctrine of res ipsa loquitur is applicable, and it is applicable in the present case before this court, but the presumption that arises from that doctrine has been overcome by the testimony of the defendant showing a thorough inspection of all its busses and that it was guilty of no negligence contributing to the injury of the plaintiff.

The burden of proof always remains upon plaintiff to show negligence, but when the doctrine of res ipsa loquitur is applicable and the plaintiff shows enough evidence to make it applicable then the burden of going forward with proof shifts to the defendant and he must show evidence that overcomes the presumption of negligence and it is then the duty of the court to determine from all of the evidence whether the defendant was guilty of any negligence that proximately caused the injury to plaintiff.

Judgments of court cannot be based upon conjecture, but the evidence as a whole must show with a reasonable degree of certainty that a plaintiff is entitled to recover before judgment can be entered in her favor. In the Gerard case the defendant failed by its evidence to overcome the presumption arising from the doctrine of res ipsa loquitur.

An order may be drawn denying recovery and dismissing the complaint.